[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a contested mortgage foreclosure action. This Court heard testimony and oral argument on November 15, 2000 and subsequent thereto the parties filed briefs dated December 15, 2000, the defendant filed a reply memorandum dated January 5, 2001, and the plaintiff filed his reply memorandum dated January 8, 2001. The Court has reviewed the testimony and the exhibits introduced into evidence as well as the briefs of the parties and based upon the totality of the evidence finds the following:
1. On October 5, 1987 the defendant, Pauline Balnius Boyer (hereinafter "Bayer"), executed in favor of the plaintiff, Salvatore Garafolo (hereinafter "Garofalo"), a mortgage note and mortgage deed on premises known as 19 Blueberry Circle, South Windsor, Connecticut, in the original principal amount of $200,000 with interest at the rate of 11% per annum. CT Page 1525 Said note was due and payable in full on October 5, 1990.
2. Bayer did not pay the balance in full by October 5, 1990. On October 26, 1990, Bayer and Garofalo entered into a modification of said mortgage which provided for an extension of the maturity date of said note and deed to October 5, 1993 and further provided that Boyer continue to make the same monthly payments as in the original mortgage of $1960.30 per month with payment in full to be made no later than October 5, 1993. There was no change in the amount of the original mortgage, and there was no change in the interest rate. The modification merely extended the time for payment for a period of three years. The said parties have agreed that the mortgage note and deed are in default and that the debt as of November 15, 2000 was $219,200 with interest running therefrom at the rate of $52.10 per day. The parties also agreed on November 15, 2000 that the plaintiff is entitled to an attorney's fee of $4,382.50. However, defendant, Boyer, claims a further reduction of $300 as a result of which the Court finds that the attorney's fees due and payable as of November 15, 2000 is $4,082.50 in favor of the plaintiff.
3. The said parties also agreed that the principal issues before this Court for decision are the special defenses filed by the defendant, Boyer. These special defenses are as follows:
 "a. The defendant, Boyer, contests the calculation of the note balance as modified." Based upon the agreement of the parties as set forth above, this issue is now moot.
 "b. 1. The plaintiff, as alleged in paragraph 4 of his complaint, modified said mortgage on or about October 26, 1990.
 2. Said modification constituted a refinance of the original mortgage in that said modification changed the term and rate of interest on said note and said note and mortgage, as modified, superseded and replaced the original mortgage.
 3. The plaintiff at the time of said modification failed to provide the defendant with the disclosures required under both the state and federal Truth-in-Lending Act.
 4. The plaintiff failed at the time of said modification to provide the defendant with a CT Page 1526 notice of right of recission or to provide notice of existence of. a three (3) business day recission day period."
4. It is undisputed that there was a modification on October 26, 1990. It is true that the term of the mortgage was changed but not the rate of interest.
5. It is undisputed that the defendant, Boyer, was not provided with disclosures under the state and federal Truth-in-Lending Act nor notice of right of recission or the existence of a three business day recission period.
6. The defendant has admitted that there is a three year statute of limitations for action on the provision requiring notice of right of recission and notice of the existence of a three business day recission period. Since no claim was made by said defendant about the failure to provide the notice of right of recission, etc., until well after October 26, 1993, the said defendant's special defense as to that issue is, therefore, not viable.
7. Therefore, the sole remaining issue for the Court to decide is whether the failure of the plaintiff to provide said defendant with the disclosure required under both the state and federal Truth-in-Lending Act (hereafter "TILA") is a valid special defense.
8. It should be noted that the burden to prove the special defense not only as to the facts but as to the law is upon the person filing such special defense, in this case the defendant, Boyer.
9. The Court's decision on the applicability of TILA is based in substantial part on the credibility of the witnesses. The Court heard testimony from Jacqueline Garofalo on November 15, 2000 and from Salvatore Garofalo, her husband, on August 18, 1999. Admittedly, the testimony of Salvatore Garofalo was in connection with an application for mortgage protection filed by the defendant. However, his testimony in that regard can also be considered by the Court as hereinafter stated.
10. The Court bases its evaluation of the credibility of the witnesses on their demeanor while appearing on the witness stand, the manner in which they responded to questions, their memory or lack thereof of certain facts, the consistency or inconsistency of their testimony and the consistency or inconsistency of their testimony in regard to other facts.
11. The issue of the applicability of the TILA boils down to the CT Page 1527 following:
A. WAS THE PLAINTIFF A CREDITOR SUBJECT TO THE TILA?
The Truth-in-Lending Act defines a "creditor" subject to the Act as follows: "The term `creditor' refers only to a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt . . . is initially payable . . ." 15 U.S.C. § 1602(f). Connecticut law defines creditor in CGS Sec. 36a-676 as a creditor as defined in Sec. 103 of the Consumer Credit Protection Act 15 U.S.C. § 1602
. . ." CGS Sec. 36a-677 and CGS Sec. 36a-678 provides that Connecticut law is subject to the federal Truth-in-Lending Act. Accordingly, this Court will address the federal statutes and regulations. To be a "creditor" under federal law subject to the TILA such creditor must extend such credit "more than twenty-five times (or more than five times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year." From the testimony of Jacqueline Garofalo who has maintained all the records of the mortgages given by Salvatore Garofalo only two loans were given by Salvatore Garofalo in 1989, the year preceding the transaction of 1990. In 1990 the only transaction was the modification agreement between Boyer and Garofalo. The Court believes the testimony of Jacqueline Garofalo. Therefore, under 12 C.F.R. § 226.2 Note 3 the plaintiff does not qualify as one who "regularly extends consumer credit". Although Sec. 4931(d) which is the Connecticut Protection from Foreclosure Act was not applicable to this issue of the TILA applicability, this Court did rule on August 18, 1999, that Salvatore Garofalo was not a "lender" under said statute because he was not a person who "makes or hold mortgage loans in the ordinary course of business . . ." This was based upon his testimony that he never made more than two or three loans per year. His testimony then further substantiates that 12 C.F.R. § 226.2, Note 3 does not apply in this case. Defendant, Boyer, has cited in her brief of December 15. 2000 that the Consumer Credit Protection Act 15 U.S.C. § 1602 provides that: "Any person who originates two or more mortgages referred to in Sec. (aa) of this section in any twelve month period . . . shall be considered a creditor for purposes of this title." This would appear to qualify the plaintiff as a creditor. However, the defendant has overlooked the fact that the section just cited was adopted and added to the Truth-in-Lending Act by a 1994 amendment, Public Law 103-325 of September 23, 1994, which states in pertinent part that it refers to mortgages ". . . consummated on or after the date on which regulations issued under Sec. 155 [note to this section] become effective". Since the modification agreement was in 1990, this section does not apply. For the foregoing reasons, the TILA does not apply to the modification agreement subject of this case since CT Page 1528 the plaintiff is not a creditor subject to such Act. Where the proponent of the Act's requirements fails to establish the lenders status as a "creditor" the Act does not apply. Selman v. Manor Mortaage Co.,551 F. Sup. 345 (ED Michigan 1982). However, whether the burden is on the defendant or the plaintiff, the evidence clearly shows that the plaintiff. was and is not a lender or creditor under the TILA, and the Act is not applicable to the modification. It should also be noted that the defendant, Boyer, has not contested the validity of the original 1987 mortgage.
B. WAS THE 1990 MODIFICATION A "REFINANCE" REQUIRING DISCLOSURES UNDERTHE TILA?
Assuming arguendo that the plaintiff is a creditor, the Court will decide whether the modification was a refinance as claimed by the defendant, Boyer, in her second special defense. 12 C.F.R. § 226.20 defines refinance as occurring only when an existing obligation subject to the regulations is "satisfied and replaced by a new obligation". In the case at bar there was no new note signed by the defendant, the old debt was never considered by the parties to have been paid off, and the modification on its face does no more than extend the payment schedule.Debra Jackson and Victoria Davis v. American Loan Company, Inc.,202 F.3d 911 (7th Cir. 2000) cites the official Staff Commentary of the Federal Reserve as "changes in the terms of an existing obligation such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation . . . American Loan does not `cancel' the old loan and note, or substitute a new one, when it agrees to defer repayment until another payday, and thus it does not `refinance' the loan". The case of John A. Begalla v. PNC Bank, Ohio, NationalAssociation, 163 F.3d 948 (1998) also cites the Federal Reserve Official Staff Commentary as follows: "Changes in the terms of an existing obligation such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation." Emphasis added. Accordingly, this Court concludes that the Modification subject of this case executed on October 26, 1990 was not a refinancing. Therefore, the TILA does not apply to that transaction.
 CONCLUSION
Based upon the foregoing, the special defenses of the defendant, Boyer, are hereby found invalid and not a defense to this foreclosure action. They are stricken. Accordingly, judgment of foreclosure by sale is entered for the plaintiff. The debt is found to be $219,200 as of November 15, 2000 with interest accruing therefrom at $52.10 per day for CT Page 1529 a total additional interest through January 24, 2001 being $3,647.00 for a total debt of $222,847.00.
Attorneys' fees are awarded to the plaintiff in the amount of $4,082, 50.
The sale will take place on March 17, 2001 at 12 noon on the subject premises. The committee for sale will be named by the clerk of the Court, the appraiser will be the person who previously appraised said premises for the plaintiff or if none was named, the appraiser will be appointed by the clerk of the Court. Publication of the advertisement for sale will be in the Hartford Courant on March 4, 2001 and March 11, 2001. The sign is to be placed on the premises no later than March 1, 2001, the return of appraiser will be on or before March 1, 2001. The committee is authorized to show the premises and obtain necessary insurance. A deposit of 10% of the agreed upon appraised value of $245,000 or $24,500 is required by the successful bidder by cash or certified check or bank check and, the plaintiff, if the successful bidder, is exempt from such deposit requirement.
Rittenband, JTR